Will the argument next sit EMA Financial v. Chances, 22274 and 22402 v. Chances & Lowe? Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. This case deals with two convertible promissory notes and the affirmative defenses lodged by my clients who are actually not signatories. Can I interrupt just to say something rather obvious and simple? There's this Adair Bayes decision, I think, and I think that it's a little complicated, but it seems to me to be very important in terms of the status of this case. And I trust both sides will try to explain in a way that I can understand what the effect of that case is on this one. So Adair Bayes... You don't have to do it now. Okay. You don't have to do it now. Well, I'm happy to at least lay out the basics, which is what's known as a convertible promissory note, which essentially embeds a stock option in the note. And so when the lender wants to take payment, he can just convert the debt into stock but does so with a guaranteed, in this case, 35% discount. When you're measuring interest, that yields a 54% gain that's actually guaranteed. And so Adair Bayes with the New York Court of Appeals decision that, indeed, you would need to count the value conveyed by the conversion discount as part of the interest rate when dealing with the usury laws. And subject to a valuation that's part of the interest rate. Yes. So it's subject to certain fact-finding at the district court level for various reasons because you do have to determine the value of the conversion discount at the time the loan was made. And what happened here? Well, what happened here was that the court dismissed the usury claim prior to Adair Bayes. The case continued on. Adair Bayes was issued. So my client was pro se at the district court. She filed a letter seeking reconsideration, but maybe it wasn't that clear. The court didn't do it. It seemed to ignore it. So we're here on appeal. Basically, this note is. So the district court made no such fact-finding about the value of the discount. Right. Their analysis of the usury claim and the conversion discount was basically the reasoning used in all the district courts that Adair Bayes rejected, which would make sense because that was the state of the district court rulings at that point in time. So Adair Bayes came down and essentially reversed that reasoning. But the district court never made a ruling on it, never addressed. Do I understand that the district court was not aware of Adair Bayes? But maybe at the very end it was. Right. So there were two major decisions in this case. And so Adair Bayes came down after the first decision, but before the second. But it was also before this court. So since Adair Bayes was issued by the New York Court of Appeals and then this court affirmed and issued another opinion, I'm not sure why they didn't respond to my client's motion for reconsideration. But she filed a letter that appeared to be a motion for reconsideration, but the court seemed to just ignore it. I'm not sure why. But the notes in this case. So are you saying that there's a pending motion for reconsideration that was never resolved? Or are you saying something else? It was pro se, and it was just ignored. And so I would say there's no pending. The motion for reconsideration wasn't denied in essence, but just did not take into account Adair Bayes? So there was a motion for reconsideration, but that was as to another issue. But the motion for reconsideration that was initially filed by Joey Chances was just a letter to the judge saying, can you look at this decision in light of Adair Bayes? I'm not sure why it was never. Our opposition responded to it and was opposed to it, but the court never addressed it either way. But I assume it was just some confusion at the district court level because she was proceeding pro se. Let me ask also, with regard to EMA's status as a broker or dealer, do you believe that there's evidence in the record that suggests that they are? That also seems like an underdeveloped theory with regard to EMA's own practices and so on. So EMA's status as a dealer comes about because of recent SEC prosecution, civil prosecutions of lenders that have the exact same business model where they purchase the security and make- The district court didn't make fact findings about EMA's own business model? No, they didn't. What business it's engaged in. Right, they never reached that question because none of the courts in the Southern District have reached that question because they're looking at the contract itself and saying nothing in the contract requires, even if you were an unregistered broker-dealer, nothing in the contract requires you to be registered, which is just a misreading of the law. I'm not sure. I think it just comes from looking at broker cases. But in this case, because the convertible promissory note is clearly a security, the mere fact that you're purchasing the security under Section 15A, if you're an unregistered broker-dealer and you effect a transaction in securities, you violated the law. I thought part of the concern was that the formation of the contract itself maybe doesn't constitute a violation of the statute and the performance can, maybe if they go ahead and convert to a security, then. But that ignores that this is a security. If you look at the securities purchase agreement, even if you're looking only at performance, the sole obligation of the lender is to purchase a promissory note. So you've just effected a transaction in securities, and if you're an unregistered broker-dealer, not only is it you violate the law by making the agreement, because you can't lawfully enter into the agreement to begin with. I was a little surprised to learn that most district courts that have dealt with this issue, as I understand you framed the issue, disagree with your view. In other words, I think that the determination generally has been that when even an unregistered broker-dealer sells the security, whatever it is, a convertible promissory note, as in the case here, that doesn't, as I think Mr. Carney was referring to, that doesn't mean that the contract, that the sale is void. There may be other consequences. In fact, there will be. According to Section 29B, it is void, because if you're Why is it that, what's your best case for that? The statute, Section 29 No, no, no, no. The statute is not a case, I understand. But what is your best decision for that? Well, a good decision would be Berkley v. Colquitt from the Third Circuit. I think that's a good case, because they looked at both the note, a note that was, that violated the law in the making of the note and the performance. So one argument they rejected, the other they upheld. And is it void ab initio? Is it void no matter what? Or is it void only if you sue? The Supreme Court has said that it's basically avoidable by the non-violating party. But, right, by the non-violating party, I think they just want to say, you know, if the non-violating party would be worse off. Well, if it's a good deal for the non-violating party, yes. Right, I think that is it. It's a non-registered broker for dealing. Do we need to reach this decision, this issue, if we agree with you on the New York appeals, the New York law issue? You know, not necessarily, given that, you know. Not necessarily. Well, we. Focus on the necessarily part. Well, the. Do we need to reach this issue? I would say, so the question is, there's a possibility that you could remand based on And then you would, the client would fall back on this secondary affirmative defense. I think that's very unlikely. So that's why we eventually filed a motion seeking summary remand based on Atterbay's alone, knowing that you probably don't have to reach this issue. Thank you very much. You deserve some time for rebuttal. Yeah. We'll hear from your friend on the other side. Good morning. May it please the court. Jeffrey Fletchman for EMA Financial, the Appalachian Cross Appellant. Can you address Atterbay's first? Sure. So, Atterbay's doesn't say that a note is on its face usurious. In fact, it says the opposite. What Atterbay's says is that if someone can come forward with evidence in the form of, they give an example of an expert that would show that the value of the option exceeds the legal interest rate, that would be usurious. It doesn't say that on its face, this note on its face has a 0% interest rate. And what happened was, in this case, is that only one of the defendants, one of the appellants, I should say, that's appealing this case raised it at all. And it was raised early on in the case. So is it the case that the district court here determined that the conversion promissory notes, the conversion notes, did not constitute interest under the New York usury law? It did. Okay. And I think that Judge Wilson on the New York Court of Appeals said that they do constitute interest under New York's usury law. And the county has a very interesting history of the usury law in New York. So how is it possible that you can tell us that Atterbay's doesn't command or demand the opposite result from what the district court came to? Sure. It's not that it does constitute interest. It's that it can. In other words, if they can show that the convertible option could be worth nothing, it could be worth 2%, it could be worth 50%. You need an expert or some other credible testimony to come forward and say what the option is worth. The premise of the district court's decision was that it cannot. That's true. But even if the district court was wrong in that premise, it doesn't mean that the court should reverse because the premise was wrong. They have to be wrong overall on the law. And the law is that they would have to come forward on summary judgment. In other words, if today in the post-Atterbay's world- So do you want us to go through and undertake that analysis? I don't think you have to for several reasons. Let me first start with the substance. In a post-Atterbay's world, if I walked into district court today and I said the note is usurious, the case should be dismissed or you should deny summary judgment, I would lose. Because Atterbay says that on its face the note is not usurious. I would have to come forward with one of two things. I would either have to say here's an expert report and the expert says that the interest is worth more than the legal rate. That's option one. Option two is I'd have to come forward and say I want to have, with a specific 56-1 affidavit, that I want expert discovery for purposes of determining what the value of the option is. They didn't do that. Okay? And that's the only one of the two appellants has actually raised it. The second one didn't raise it in their answer at all. That's one. Two, procedurally, the appellants are former executives and founders of Joe New York Inc. This defense of usury belongs to Joe New York Inc. Joe New York Inc. has not appealed. Joe New York Inc. was put into default by the appellants. They ran it. They, during the course, had the same lawyer the whole time. At the very end of the case, they elected to, well, no, that's not true. Their lawyer withdrew five days before the scheduled trial. And at that point in time, they decided, elected to put the entity into default. And a few months later, the district court entered a default. So this defense of usury, usury is a waivable defense. It doesn't belong to them. And they're collaterally stopped from asserting it. It's just that simple. So the whole issue of outer bays, it's something that I think that we would. Are you saying it was fully and fairly litigated by virtue of the entry of default? Correct. Does that constitute full and fair litigation? It does when they purposely put the entity that they control and which they founded and which they were executive of into default and elect not to defend it. That was their choice, and that's the law. Counsel withdrew. I mean, there could have been any number of reasons why a default was entered at the end of the day. Isn't that right? It's true. But if you look at the record, the district court gave them several months and several opportunities to hire counsel for the defendant. It may even be in the record that they simply said that there was no assets and they don't care. I don't remember, honestly. But there's no question that it was a conscious decision not to hire counsel. That was their choice. It wasn't that they weren't given an opportunity. They were given several opportunities. Do you think they had the resources to hire counsel and just decided to? I do. I do. I think that if they – and if – I do. I do believe that. Why should we go forward, though, with a decision by the district court like this that proceeds on a premise that has been discarded by the New York Court of Appeals and a decision that's been affirmed by our court? It's demonstrably incorrect. So I don't think it is. In other words, I think that – I agree that the law that it relied on is not correct. I agree with that. But I think that if today, if they made – if I made the same motion and they came forward with the same defense, they would still lose. They would have to come forward with an expert. They would have to – or they would have to come with an affidavit saying they want that expert discovery. They didn't do it. They just said facially, on its face, the note is usurious. It's not. It's not. And that's just wrong. So even if police authorities in today's world, they lose. Can I ask you a question about something else? Sure. Which is that we, on a quick review, found six other cases involving EMA Financial that seemed to involve debates over the enforcement of floating price convertible notes from various companies. Would it be fair of us to conclude from just these cases that this is a business model that EMA is pursuing, micro-cap lending based on convertible progress-free notes? I think it's fair to conclude that there's – EMA has done several of these transactions. Does that constitute a business model? I guess maybe it does. But that's all that I – I think that's the only thing you could conclude from the cases. These are six in the course of – since 2019, I guess, reported. And then we also have the SEC's enforcement actions that are of interest. Right. So let me go to the broker-dealer arguments. So the first argument I'm going to make is that it was waived. In other words, the district court allowed this defense to be effectively litigated at trial. He let them argue it. And when they objected at trial again, he said that – Judge Broderick said that they are allowed to make their arguments, to present whatever evidence they want, and they didn't make their showing. In other words, aside from the law, even assuming that this could be a transaction that was subject to the broker-dealer, they did not establish that EMA was a broker-dealer. That's one. I noted that in your letter of the court of April 15, 2021, you engaged in a fair amount of discussion over whether EMA was a broker-dealer or not. And they – you know, there were debates about how much evidence was in the record about it. But this is – you know, you point to waiver now, but it seems like it was fairly well discussed by you on behalf of your client during the district court proceedings. Am I wrong in understanding that? So I agree that it was certainly discussed at the district court level. I don't think it should have been. I think that allowing them to raise it at – essentially on the eve of trial, they never even amended their answer. In fact, the district court denied them leave to amend their answer based on other grounds. And they came up with this idea later, and he let them argue it. But you had a chance to respond to it at length. We had a chance to respond to it at trial, but we didn't have discovery. For example, one of the things they would have to prove – When you say at trial, I mean, I'm looking at a letter that's maybe five pages, single-spaced. Yeah. That goes into – has a lot of citations and so on. Sure. Yeah. Okay. That's true. That's true. But this defense appeared after the trial was scheduled, well past the discovery deadline. One of the things they would have to establish is that they're an innocent borrower. A sophisticated publicly-traded company is not an innocent borrower. And that's something that I would have explored in discovery had I had discovery. But we didn't because they raised it on the eve of trial. So what kind of things would you have been looking for in discovery? I would have shown that they're a sophisticated publicly-traded company, that they knowingly entered into this notes, and that they're not the innocent party that the statute requires them to be in order to assert this defense. And what suggests that they're not innocent, just that they are publicly held or were? That they're a sophisticated publicly-traded company. Yes. Among other things. So sophisticated necessarily means not innocent. Not an innocent party. It could. Again, but this is something – I'm just pointing out something that I could have done discovery on. But I didn't because it was raised really on the eve of trial. So that's, you know – and honestly, the court – this court will probably have to decide the broker-dealer issue at some point. But this is not the case you should decide it in. This is a case where it was raised at the last minute that it's a case that it really was waived. And it's really – it wouldn't be fair to my client to decide it based on this record. If you're wrong as to the usury question, is this something we have to – I know that's unfair to assume that. But assume for a second that you're wrong on that. Does this issue disappear? If I'm wrong on usury and the district court concludes that I am wrong, then it disappears. Thank you. Thank you very much. Okay, I didn't talk about my cross-appeal. I don't know. Go ahead. I'll give you a minute. Okay. So assuming that the court reaches a cross-appeal, which maybe it won't. But there's a whole bunch of errors in the decision that I think are not really disputed. The first one is the damage calculation. It was just wrong. The law is very clear. It's the breach date. And in this case, the judge of the district court did not use the breach date. He simply took the number left – the amount left on the note and awarded interest. And that's just wrong. And I don't think it was addressed at all. There was no opposition to that as far as I could see. There was this idea of the constructive fraudulent conveyance not pointing out the conveyances. That's simply not correct. I went very, very, very specific detail listing the transactions that were – the things that were conveyed fraudulently. That's – I'm sorry. I apologize. There's the idea that the intentional fraudulent conveyance was – was not – was – I did not show that they were intent. That's, again, incorrect.  The district court actually held several times that the individual – this is a quote – the individual defendants confirmed that the transactions were not for anything of value or to discharge any debt, and their claims fly in the face of the individual defendants' own testimony that they have not been repaid for any of their personal loans or investments to – in the corporate entities. And then the district court found that they had put in millions of dollars, even though they never showed they put in a single dollar. The district court reopened discovery in the middle of the trial to allow them to serve subpoenas. Their subpoenas, which is error on its face, but even what they got back did not show that they had put not even one dollar into the corporation, not one, and the district court repeatedly cited to their testimony for which they produced no discovery at all that they had put in millions of dollars into the company. The record just does not support that. Then there's our attorney's fees. The district court, sua sponte, said that we were not entitled to these – we should have demonstrated at trial what our attorney's fees were instead of doing it at the end of the case, which is the typical way to do it, with no opposition, again, from the appellants, which I just think is wrong. We had – we had to – If we were to vacate on the – on our days, the New York Court of Appeals case, do we have to deal with any of this? Very unlikely. Okay. I'll take that answer. Okay. The answer is no. Okay. All right. Okay. Thank you very much. Just a few words of rebuttal. There is no evidence that my clients preceded pro se at the district court level because they obviously couldn't afford their own attorneys. There were – Joey Chance's ex-husband, I think at that point, was in charge of Joey New York, the company. So to say that my clients were the ones that decided to put the company in default, actually, the record reflects that that's not the case. That decision was out of their hands.  Even then, I don't think that they did have the funds to proceed. But when it comes to the post-Atterbay's world and trying to demonstrate the value of the conversion discount, I don't think that there has been a particular methodology established. There hasn't been a case where the court has determined what it is that's needed in every single case, whether or not it's an expert opinion or if you can reach the intent to charge a usurious interest rate by other means. It may not necessarily be an expert opinion as to the value of the conversion option. And while it's true that none of these things were brought up at the district court, it was a motion to dismiss. It never got to proceed to summary judgment or any of the procedures that you would need to establish this kind of facts. Thank you. Thank you very much. We'll reserve the decision.